IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

QUANTUM PLATING, INC.           )
                                )
        Plaintiff,               )
                                )
    v.                           )     Civil Action No. 09-166 Erie
                                )
CENTRAL FREIGHT LINES, INC., a   )
Texas Corporation and BLUE SPRING)
CORPORATION, a Texas Corporation,)
                                )
        Defendants.              )

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., DISTRICT JUDGE.

Plaintiff, Quantum Plating, Inc. ("Quantum"), a Pennsylvania corporation, brought this action for breach of contract against Defendant, Blue Spring Corporation, ("Blue Spring"), a Texas corporation, arising out of its purchase of a waste water treatment system.[1] This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332 and 1337.

Presently pending before the Court is Blue Spring's Renewed Motion to Dismiss for Lack of Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) or, in the alternative Motion to Transfer Venue. For the reasons set forth below, both Motions will be denied.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Quantum is a Pennsylvania corporation with its principle place of business in Erie, Pennsylvania. See ECF No. 1, Complaint ¶ 1. Blue Spring is a Texas corporation, with its principle place of business located in Port Lavaca, Texas. Id. at ¶ 3. Quantum alleges that Blue Spring "marketed" a waste water treatment system (the "System") for sale in several states, including Pennsylvania, and that on September 23, 2006, Quantum's President, Chris Busko ("Busko"), emailed Blue Spring requesting information regarding a system. ECF No. 1, Complaint at ¶ 7; ECF No. 24, Plaintiff's Response, Pl. Ex. 24-1. Busko subsequently spoke with a representative of Blue Spring by telephone on September 25, 2006 regarding the same. Pl.

---

[1] Quantum also filed suit against Central Freight Lines, Inc., ("Central Freight"), a Texas corporation, for negligence under the Carmack Amendment, 49 U.S.C. § 14706.

1

Ex. 24- 2.  On October 6, 2006, Blue Spring mailed Quantum a "PrecipRO DemoDVD" and offered to analyze Quantum's waste water.  Pl. Ex. 24-3.  Thereafter, Blue Spring prepared a price quotation for the manufacture of the System and Quantum ultimately agreed to purchase a "Blue Spring PrecipRO-1000 DP Rinse Water Recycler Module."  ECF No. 23, Defendant's Brief, Def. Ex. 23-1, Desai Aff. ¶¶ 9-10.  All contract negotiations for the purchase of the System occurred by telephone, facsimile, e-mail and the U.S. Mail.  Id. at ¶ 11.  On March 15, 2007, Blue Spring sent Quantum an invoice for the System, and in a letter dated April 2, 2007, acknowledged receiving payment in the amount of $107,600.  Pl. Exs. 24-4; 24-5.

On May 14, 2007, Satish Desai ("Desai"), the president of Blue Spring, visited Quantum's facility in Erie, Pennsylvania preliminary to the shipment of the System.  Pl. Ex. 24-6.  As a follow up to his visit, Desai emailed information concerning additional components for the System to Quantum on May 24, 2007.  Pl. Ex. 24-7.  Thereafter, Blue Spring sent Quantum a quotation for these additional items and Quantum purchased them on June 28, 2007 for $21,020.  Pl. Ex. 24-8.

By email dated December 19, 2007, Desai informed Quantum that the System had been successfully tested at its plant and offered various suggestions for its installation.  Pl. Ex. 24-9.  Blue Spring further informed Quantum that the System would be shipped by Central Freight.  Pl. Ex. 24-9.  Desai noted that he would be coming to Erie for the "commissioning service" and would "keep in touch."  Pl. Ex. 24-9.  The System arrived in Erie on December 24, 2007.  ECF No. 1, Complaint ¶ 17.  However, Quantum determined that it was damaged and consequently, it rejected delivery.  ECF No. 1, Complaint ¶¶ 18-20.  While in transit back to Blue Spring, the trailer transporting the System caught fire, causing substantial heat and smoke damage.  Id. at ¶ 22.  On February 4, 2008, Central Freight returned the System to Blue Spring.  Pl. Ex. 24-12.  On February 5, 2008, Desai emailed Quantum a damage report, wherein he indicated, *inter alia,* that it would take approximately 30 to 45 days to repair the System.  Pl. Ex. 24-12.

Blue Spring contracted with Betz Freight ("Betz") to pick up the System at its Port Lavaca, Texas facility and deliver it to Erie, Pennsylvania.  Pl. Ex. 24-16.  Blue Spring informed Quantum on April 2, 2009 that the System had been loaded onto a truck for delivery.  Pl. Exs. 24-17; 24-18.  The System was delivered to Quantum on April 9, 2009.  ECF No. 1, Complaint ¶

26. Quantum contends that the System repeatedly failed and did not operate at or near full capacity. ECF No. 1, Complaint ¶¶ 26-28.

On May 12, 2009, Quantum contacted Blue Spring by email to report it was experiencing problems with the System and also requested a wiring diagram. Pl. Ex. 24-20. Throughout May 2009, Blue Spring remained in contact with Quantum in an attempt to provide guidance with respect to rendering the System operational. Pl. Exs. 24-19; 24-20; 24-22. Blue Spring also shipped replacement parts directly to Quantum's Erie facility or ordered replacement parts to be shipped to Quantum on at least five (5) separate occasions between April 22, 2009 and June 12, 2009. Pl. Exs. 24-21; 24-23; 24-24; 24-25.[2]

On May 22, 2009, Desai emailed Quantum stating that he would "be in [the] area" visiting another customer and wanted to "visit ... sometime between [the] 9th and 10th of June" to see if he could "solve [the] remaining problems with [the] PrecipRo wastewater recycling system." Pl. Ex. 24-24. During this second visit, Desai utilized various diagnostic tools in an attempt to "determine why the [System] was not working as expected." Pl. Ex. 24-28 p. 6. On June 12, 2009, after Desai returned to Texas, Blue Spring informed Quantum that it would be "writing ... a report on some of the recommended changes for your setup." Pl. Ex. 24-25.

On July 2, 2009, Quantum filed suit against Blue Spring and Central Freight. Blue Spring initially filed a motion to dismiss for lack of personal jurisdiction or, in the alternative, a motion to transfer venue on September 9, 2009. See ECF No. 17, Motion to Dismiss. This

---

[2]These shipments included:

> 1. On April 22, 2009 Blue Spring shipped Quantum several PVC pipes and assorted elbows.
> 2. On May 8, 2009, Blue Spring sent Quantum a pump head.
> 3. On or about May 13, 2009, Blue Spring ordered two sets of valve assemblies to be delivered directly to Quantum.
> 4. On or about May 15, 2009, Blue Spring sent Quantum suction and discharge valves for a pump head.
> 5. On May 22, 2009, Blue Spring sent Quantum a 10 Amp Circuit breaker.
> 6. On June 12, 2009, Blue Spring sent Quantum a package containing a fuse, a PVC filling, a 15 A circuit breaker and some labels.

See Pl. Exs. 24-21; 24-23; 24-24; 24-25.

Court denied the motions without prejudice and granted the parties 90 days in which to conduct jurisdiction-related discovery. See Minute Entry dated February 3, 2010. Discovery was completed and the instant renewed motions were filed on May 24, 2010. See ECF. No. 22, Renewed Motion to Dismiss. The Court held argument on the motions on July 26, 2010, see ECF. No. 28, Hearing Tr., and the matter is now ripe for disposition.

## II. STANDARD OF REVIEW

When a defendant challenges personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of showing that personal jurisdiction exists. Marten v. Godwin, 499 F.3d 290, 295-96 (3rd Cir. 2007). "In deciding a motion to dismiss for lack of personal jurisdiction, we take the allegations of the complaint as true. But once a defendant has raised a jurisdictional defense, a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3rd Cir. 1996) (internal citations omitted); see also Patterson by Patterson v. F.B.I., 893 F.2d 595, 604 (3rd Cir.1990); D'Jamoos v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3rd Cir. 2009); O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 316 (3rd Cir. 2007). In demonstrating that jurisdiction is proper, the plaintiff is required to establish facts with reasonable particularity. Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3rd Cir. 1992). In addition, since personal jurisdiction is "inherently a matter which requires resolution of factual issues outside the pleadings," a plaintiff may not rely entirely on general averments in the pleadings. Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66 n.9 (3rd Cir. 1984). Where a court does not hold an evidentiary hearing, the plaintiff need only establish a prima facie case of personal jurisdiction. Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3rd Cir. 2009). The court must consider the pleadings and affidavits in a light most favorable to the plaintiff and any discrepancies must be resolved in its favor. Carteret Sav. Bank, F.A. v. Shushan, 954 F.2d 141, 142 n.1 (3rd Cir.), cert. denied, 506 U.S. 817 (1992). The burden then shifts to the defendant to establish that asserting jurisdiction is unreasonable. Id. at 150.

## III. DISCUSSION

*A.     Blue Spring's Jurisdictional Challenge*

Federal district courts "may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." D'Jamoos, 566 F.3d at 102 (quoting Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 436 (3rd Cir. 1987). See also Marten, 499 F.3d at 296; O'Connor, 496 F.3d at 316. This involves a two-step inquiry whereby courts first determine whether the forum state's long-arm statute extends jurisdiction to the nonresident defendant, and then determine whether the exercise of that jurisdiction would comport with federal due process principles. See Pennzoil Products Co. v. Colelli & Assoc., Inc., 149 F.3d 197, 2002-03 (3rd Cir. 1998). Pennsylvania's long-arm statute permits a court to exercise jurisdiction over non-resident defendants "to the fullest extent allowed under the Constitution of the United States and [jurisdiction] may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa.C.S.A. § 5322(b).[3] Pennsylvania courts typically restrict their personal jurisdiction inquiry to the question whether the exercise of personal jurisdiction over the nonresident defendant would be constitutional, since Pennsylvania's Long-Arm statute authorizes jurisdiction to the fullest extent permissible under the U.S. Constitution. See 42 Pa. C.S.A. § 5322(b); Renner v. Lanard Toys Limited, 33 F.3d 277, 279 (3rd Cir. 1994) ("[T]his court's inquiry is solely whether the exercise of personal jurisdiction over the defendant would be constitutional."); Pennzoil, 149 F.3d at 200 ("A district court's exercise of personal jurisdiction pursuant to Pennsylvania's long-arm statute is therefore valid as long as it is constitutional."). A district court may assert either general or specific jurisdiction over a non-resident defendant consistent with these due process principles.

---

[3]Quantum relies on the following provisions of the Pennsylvania Long-Arm statute, which describes "transacting business" in this Commonwealth as:

> (ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefits or otherwise accomplishing an object with the intention of initiating a series of such acts.
>
> (iii) The shipping of merchandise directly or indirectly into or through this Commonwealth.

42 Pa.C.S.A. § 5322(a)(1)(ii) and (iii).

5

Kehm Oil Co. v. Texaco, Inc., 537 F.3d 290, 300 (3rd Cir. 2008); O'Connor, 496 F.3d at 317.[4]

In determining whether specific jurisdiction exists it is necessary to undertake a three-part inquiry described by our Circuit Court of Appeals in the following manner:

> First, the defendant must have "purposefully directed [its] activities" at the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 2182, 85 L.Ed.2d 528 (1985) (internal quotation marks omitted). Second, the litigation must "arise out of or relate to" at least one of those activities. [*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)]; *O'Connor*, 496 F.3d at 317. And third, if the first two requirements have been met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476, 105 S.Ct. At 2184 (quoting *Int'l Shoe*, 326 U.S. at 320, 66 S.Ct. At 160).

D'Jamoos, 566 F.3d at 102.

The first two inquiries are concerned with determining whether the defendant has the requisite minimum contacts with the forum. Id. "The threshold requirement is that the defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." Id. (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). See O'Connor, 496 F.3d at 317. It is not necessary, for purposes of this requirement, to show that the defendant physically entered the forum state. D'Jamoos, 566 F.3d at 103; O'Connor, 496 F.3d at 317. Nevertheless, the defendant's contacts must amount to "a deliberate targeting of the forum." D'Jamoos, 566 F.3d at 103 (quoting O'Connor, 496 F.3d at 317).

Assuming the defendant can be shown to have purposefully directed its activities at the forum state, then it must next be shown that the litigation "arises out of or relate[s] to" at least one of those contacts. O'Connor, 496 F.3d at 318. The Third Circuit has made clear that "but-for causation" is a "useful starting point for the relatedness inquiry," but it is not the end of the inquiry, id. at 322, for "specific jurisdiction requires a closer and more direct causal connection

---

[4] General and specific jurisdiction are "analytically distinct categories, not two points on a sliding scale." O'Connor, 496 F.3d at 321. General jurisdiction is the broader of the two, and exists where the defendant has maintained "systematic and continuous" contacts with the forum state. Kehm Oil, 537 F.3d at 300; Marten, 499 F.3d at 296. The contacts need not be related to the particular claim proceeding in court. Specific jurisdiction, which is narrower, allows for the exercise of personal jurisdiction over a non-resident defendant when the claim at issue "arises from or relates to conduct purposely directed at the forum state." Kehm Oil, 537 F.3d at 300 (citing Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984)); see also Mellon Bank, 960 F.2d at 1221. Here, Quantum relies exclusively on specific jurisdiction.

6

than that provided by the but-for test." Id. at 323. However, the required causal connection is looser than the tort concept of proximate causation. Id. The appropriate analysis is "necessarily fact-sensitive," focusing on the "reciprocity principle upon which specific jurisdiction rests" – whether the defendant received the benefits and protections of a state's laws to the extent it should, and as a quid pro quo, submit to the burden of litigation. Id.

Assuming that the record reflects sufficient minimum contacts between the non-resident defendant and the forum state, courts will then determine whether the exercise of jurisdiction would otherwise comport with "traditional notions of fair play and substantial justice." O'Connor, 496 F.3d at 324 (quoting Int'l Shoe, 326 U.S. at 316). Because the existence of minimum contacts makes jurisdiction presumptively constitutional, the defendant at step three of the specific-jurisdiction-inquiry process "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Id. (quoting Burger King, 471 U.S. at 477). The burden upon the defendant at this stage of the inquiry is considerable. See Pennzoil, 149 F.3d at 207 (noting that if minimum contacts are present, then jurisdiction will be unreasonable only in "rare cases"). Factors relevant to this inquiry include: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." Burger King, 471 U.S. at 477 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)). In Telcordia Tech Inc. v. Telkom SA Ltd., 458 F.3d 172, 177 (3rd Cir. 2006), cert. denied, 549 U.S. 1206 (2007), the Third Circuit had the occasion to address the appropriate jurisdictional analysis in the context of a breach of contract dispute:

> ... In determining jurisdiction for a breach of contract, the district court must consider the totality of the circumstances. *Remick v. Manfredy*, 238 F.3d 248, 256 (3rd Cir. 2001).
>
> Traveling to the forum to consult with the other party can constitute purposeful availment, regardless of who solicited the contract. *Carteret*, 954 F.2d at 150. Moreover, physical presence in the forum is no longer determinative in light of modern commercial business arrangements; rather, mail and wire communications can constitute purposeful contacts when sent into the forum. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462,

7

>   476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). ... Finally, "[i]n
>   contract cases, courts should inquire whether the defendant's
>   contacts with the forum were instrumental in either the formation
>   of the contract *or its breach*." *Id*. at 150 (emphasis added).

Telcordia Tech, 458 F.3d at 177.

Here, contrary to Blue Spring's attempts to characterize its contacts with Pennsylvania as "random," "fortuitous" or "attenuated," I find that there is substantial evidence to support the conclusion that Blue Spring "purposely directed its activities" at this forum. As set forth more fully above, there were numerous contacts by Blue Spring with this forum by telephone, email and fax in conjunction with the finalization of the contract for the sale and shipment of the System. Telcordia Tech makes clear that such contacts can "constitute purposeful availment" for purposes of the jurisdictional analysis. General Electric Co. v. Deutz, 270 F.3d 144, 150-51 (3rd Cir. 2001); see also Grand Entertainment, 988 F.2d at 482 ("contract negotiations with forum residents can empower a court to exercise jurisdiction").

Post contract, Blue Spring also had repeated contact with Quantum in furtherance of an ongoing attempt to resolve problems with the System. In addition to emails, faxes and telephone contact, Desai spent several days in Erie attempting to isolate the cause or causes of the System's deficient performance. For the forgoing reasons, I conclude that Blue Spring "purposely directed its activities" at this forum.[5]

I also find that the exercise of personal jurisdiction over Blue Spring would not offend traditional notions of fair play and substantial justice. As previously stated, at this stage of the inquiry, Blue Spring bears a heavy burden, for the existence of minimum contacts makes jurisdiction presumptively constitutional. O'Connor, 496 F.3d at 324; Pennzoil, 149 F.3d at 207; Grand Entertainment, 988 F.2d at 483. Blue Spring must present a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." Grand Entertainment, 988 F.2d at 483 (quoting Carteret, 954 F.2d at 150). Here however, Blue Spring has failed to present any case, compelling or otherwise, that it would be unreasonable to subject it to jurisdiction in this forum. The burden of litigating this case in Pennsylvania "does not rise

---

[5] The second requirement that the litigation "arises out of" at least one of the contacts is easily satisfied here. The focus of this lawsuit is an allegedly defective system designed and sold by Blue Spring. All pre and post contract contacts related to the System's performance and/or methods to improve it.

to the level of unconstitutional hardship." Reassure America Life Ins. Co. v. Midwest Resources, Ltd., 721 F. Supp. 2d 346, 357 (E.D.Pa. 2010). Pennsylvania has a strong interest in adjudicating this dispute since Quantum is a citizen of Pennsylvania. Burger King, 471 U.S. at 473 ("A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors."); Philadelphia Professional Collections, LLC, v. Young, 2010 WL 5257651 at *5 (E.D.Pa. 2010) ("Pennsylvania has an interest in providing redress for a contractual breach inflicted on its citizen[s].") (quoting Specialty Ring Prods., Inc. v. MHF, Inc., 2001 WL 1466152 at *4 (E.D.Pa. 2001).

For the reasons set forth above, Blue Spring's motion to dismiss for lack of jurisdiction will be denied.

### B.    *Motion to transfer*

Alternatively, Blue Spring requests that this Court transfer this matter to the United States District Court for the Southern District of Texas.[6] This Court has the discretionary authority to transfer this action to a different venue pursuant to 28 U.S.C. § 1404(a), which provides, that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of § 1404(a) is to "prevent the waste of 'time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense . . . .'" Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (quoting Continental Grain Co. v. Barge FBL-585, 364 U.S. 19, 27 (1960)). While § 1404 gives the court discretion to decide a motion to transfer based on an individualized, case-by-case consideration of convenience and fairness, such motions are not to be liberally granted. Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3rd Cir.), cert. denied, 401 U.S. 910 (1970). The party seeking the transfer bears the burden of proving that the transfer is proper. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3rd Cir. 1995).

The Court of Appeals in Jumara outlined the private and public factors for the Court to consider in exercising its discretion. Id. The relevant private factors to consider include: (1)

---

[6] Quantum does not dispute that the Southern District of Texas would be a proper venue. See Jumara v. State Farm Ins. Co., 55 f.3d 873, 879 (3rd Cir. 1995) (stating that moving party has the burden of showing the appropriateness of the transfer).

9

each party's forum preference; (2) where the claim arose; (3) the convenience of the parties as indicated by their relative physical and financial conditions; (4) the convenience of the witnesses; and (5) the locations of books and records. Jumara, 55 F.3d at 879, see also In re Amendt, 169 Fed. Appx. 93, 96 (3rd Cir. 2006) (same). The Court considers a number of public factors, including: (1) enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. Jumara, 555 F.3d at 879; see also In re Amendt, 169 Fed. Appx. at 96 (same).

Courts have uniformly held that the plaintiff's choice of forum is entitled to substantial deference and should not be lightly disturbed. Stewart Organization, 487 U.S. at 29; Jumara, 55 F.3d at 879; Nat'l Asset, 2010 WL 3338343 at *3. This factor favors Quantum as it brought suit in this district and resides here as well.

The second factor under Jumara analyzes "whether the claim arose elsewhere." Jumara, 55 F.3d at 879. The focus of this inquiry is "where the activities relevant to the claims at issue took place." National Asset Management, LLC v. Coleman, 2010 WL 3338343 at *4 (W.D.Pa. 2010). Here, many of the activities relevant to the claim occurred in this district. The System, which is the subject of this lawsuit, was delivered to this district and presumably remains here. Quantum allegedly experienced difficulties with its operation while situated at its plant. Blue Spring's president, Desai, visited Quantum on two occasions to provide technical assistance. In addition, a significant amount of electronic correspondence was exchanged between Quantum and Blue Spring. On balance, I find this factor favors Quantum.

This record does not support the conclusion that one party would be more significantly inconvenienced than the other if required to litigate outside its own district. Certainly, both parties would likely find it more convenient to litigate in its own district. There is nothing of record however, to support the conclusion that either party would be significantly financially burdened if required to litigate elsewhere. This factor favors Quantum.

Whether witnesses would be inconvenienced is only relevant "to the extent

that the witnesses [would] actually be unavailable for trial in one of the fora." Jumara, 55 F.3d at 879. Here, Blue Spring has failed to identify any non-party witnesses that are either unable or unwilling to travel to Pennsylvania for trial. Connors v. R & S Parts & Services, Inc., 248 F. Supp. 2d 394, 396 (E.D.Pa. 2003) (convenience of witnesses is relevant only if they might be unavailable for trial; no claim that witnesses would be unable to testify); Miller v. Consolidated Rail Corp., 196 F.R.D. 22, 26 (E.D.Pa. 2000) (defendant advanced no evidence to support assertion that any witness would have to be compelled to testify by subpoena). Given the fact that Blue Spring bears the burden of demonstrating that witness inconvenience would render non-party witnesses unavailable for trial, and given its failure to do so, I find this factor weighs in favor of Quantum.

At oral argument, Blue Spring's counsel conceded that all the relevant documents had been exchanged between the parties. ECF No. 28, Hearing Tr. p. 14. Consequently, "the locations of books and records" is not meaningfully at issue and this factor weighs in favor of Quantum as well.[7]

In light of the above, Blue Spring's motion to transfer venue will be denied.

### IV. CONCLUSION

An appropriate Order follows.

---

[7] Blue Spring does not contend that any of the public factors favor transfer of this case to Texas.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| QUANTUM PLATING, INC. ) <br> ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CENTRAL FREIGHT LINES, INC., a ) <br> Texas Corporation and BLUE SPRING ) <br> CORPORATION, a Texas Corporation, ) <br> ) <br> Defendants. ) | Civil Action No. 09-166 Erie |

## **ORDER**

AND NOW, to wit, this 17th day of February, 2011, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Defendant Blue Spring Corporation's Renewed Motion to Dismiss for Lack of Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) or, in the alternative Motion to Transfer Venue pursuant to 28 U.S.C. §§ 1631, 1404(a) and/or 1406(a) [ECF No.22] is DENIED.

s/ Sean J. McLaughlin
United States District Judge

cm: All parties of record.